UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

OSCAR ALEXANDER CURIMILMA
QUILLE,

                    Petitioner,

        v.

TODD BLANCHE, Acting Attorney General
of the United States, TODD LYONS,
Director, U.S. Immigration and Customs
Enforcement, MARKWAYNE MULINS,
Secretary of the U.S. Department of
Homeland Security, KEN GENALO, New
York Field Office Director for U.S.
Immigration and Customs Enforcement,
RAUL MALDONADO, JR., Warden,
Metropolitan Detention Center,

                    Respondents.

**MEMORANDUM & ORDER**
26-CV-2818 (HG)

**HECTOR GONZALEZ**, United States District Judge:

On April 30, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested

Petitioner Oscar Alexander Curimilma Quille in Patchogue, New York, in front of his home.

Petitioner was ultimately transferred to the Metropolitan Detention Center in Brooklyn, where he

remains detained. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF

No. 1.[1] For the reasons that follow, his Petition is GRANTED.

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

**BACKGROUND**[2]

Petitioner is a citizen of Ecuador who entered the United States without inspection or admission in or about September 2021.  *See* ECF No. 1 ¶¶ 14, 16.  Since his arrival, Petitioner has lived in New York where he has married, become a father of a one-year-old child who is a U.S. Citizen, and been "gainfully employed" in the construction industry.  *See id.* ¶¶ 9–10.

On April 30, 2026, while ICE was seeking another individual, officers attempted to pull over a car that matched the description of a vehicle associated with their target and observed Petitioner and the unnamed individual as they exited the car.  ECF No. 6 at 5.  Ultimately, Petitioner was "surrounded," and officers "demanded to see his identification, and asked him questions about his national origin and birthplace" before they arrested him, without a warrant, outside of his home.  *See* ECF No. 1. ¶¶ 11–13, 19.

Petitioner initiated an action on May 7, 2026, by filing a petition for a writ of habeas corpus.  *See* ECF No. 1, *Curimilma Quille v. Lyons*, No. 26-cv-2755 (E.D.N.Y. May 7, 2026) ("*Quille I*").  A few days later, Petitioner initiated the instant action by filing another petition for a writ of habeas corpus, *see* ECF No. 1 ("Petition"), and Judge Merchant issued an Order to Show Cause, directing the government to "show cause why the Petition should not be granted," *see* May 12, 2026, Text Order.[3]

---

[2]    The Court relies on evidence submitted by the parties in outlining the facts relevant to this Order. The facts recited here are undisputed unless otherwise noted.  *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 398 n.2 (E.D.N.Y. 2025).

[3]    The same day Judge Merchant issued her Order to Show Cause, the government moved to reassign this case to the undersigned in light of Petitioner's earlier petition.  *See* ECF No. 5. The Court granted that motion, consolidated the two cases, *see* May 14, 2026, Text Order, and, ultimately, dismissed the petition in *Quille I* as duplicative of the instant Petition.  *See Quille I*, No. 26-cv-2755, Text Order (E.D.N.Y. May 15, 2026).

The government filed its response on May 15, 2026, *see* ECF No. 6 ("Response"), in which it indicated its position that "Petitioner is not entitled to habeas relief" because "[h]e is lawfully detained pursuant to 8 U.S.C. § 1226(a), ICE's initial custody determination is not subject to district court review, and because [P]etitioner has failed to exhaust his administrative remedies," *id.* at 1–2. The government also noted that in response to the Court's May 14 Order in *Quille I*, the Department of Homeland Security ("DHS") had scheduled a bond hearing for May 18, 2026, at 8:30 a.m. *Id.* at 2. The government represented that Petitioner's counsel did not intend to "proceed on a bond hearing at this time . . . [and was] only seeking immediate release." *Id.*

Petitioner filed his reply the next day. *See* ECF No. 7 ("Reply"). There, he clarified that he was "not attempting to bypass the administrative process," and intended "to seek an adjournment of the May 18 bond hearing because counsel cannot responsibly proceed without a meaningful opportunity to gather the necessary evidence." *Id.* at 2. Petitioner further clarified that "the mere scheduling of a bond hearing does not moot or cure the habeas petition," because his Petition "challenges the antecedent legality of the arrest, the timing and sufficiency of the [Notice to Appear ("NTA")], the sufficiency of the Government's claimed warrantless-arrest basis, the adequacy of ICE's initial custody determination, and whether exhaustion should bar habeas review where the initial deprivation of liberty was unlawful from the start." *Id.*

### LEGAL STANDARD

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); *see also Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). A petition for a writ of habeas corpus under Section 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody

3

in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

Particularly relevant here is the Second Circuit's recent decision in *Cunha v. Freden*, --- F.4th ----, 2026 WL 1146044 (2d Cir. Apr. 28, 2026).  There, the Circuit held that Section 1226(a), not Section 1225(b)(2)(A), applies to noncitizens like Petitioner who entered the United States without inspection and admission and were not apprehended at or near the border at the time of entry.  2026 WL 1146044, at *2.

Regardless of the statutory basis for detention, *Mathews v. Eldridge*, 424 U.S. 319 (1976), sets forth the test for determining whether ICE's detention of Petitioner violates his due process rights.  *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying the *Mathews* test in the context of civil immigration confinement).  Under that test, the Court must balance:  (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

## DISCUSSION

Petitioner seeks habeas release based on:  (1) ICE's "failure to follow mandatory detention regulations and procedures," by detaining him "without a contemporaneous, individualized custody hearing"; and (2) ICE's decision to "seize first and explain later" *i.e.*,

4

arrest him "without presenting a warrant, without articulating probable cause, and without identifying a lawful basis for the seizure at the time," among other claims.[4]  *See* ECF No. 1 ¶¶ 110–55, 167–71.  The government argues that, in light of the Second Circuit's decision in *Cunha*, "ICE is detaining Petitioner pursuant to § 1226(a)."  ECF No. 6 at 2–3.  In the government's view, they have complied with the statutory requirements of that section because "ICE made an individualized custody determination that Petitioner poses a flight risk," and should be detained.  *Id.*  With respect to Petitioner's argument that his arrest is improper because it was warrantless, the government argues it is "unavailing" because ICE complied with the procedures of 8 U.S.C. § 1357(a)(2).  *Id.* at 6.

At bottom, the primary question is whether the government's detention of Petitioner violates his due process rights.  Accordingly, the Court applies the *Mathews* test.  *See Velasco Lopez*, 978 F.3d at 851.

Here, there is no question that Petitioner's interest in "being free from imprisonment" is "the most significant liberty interest there is."  *Id.*  Therefore, the Court's inquiry turns on "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  *Mathews*, 424 U.S. at 335.

On that point, the record demonstrates that the erroneous risk of deprivation of Petitioner's liberty interest is high.  In fact, because ICE's initial custody determination was inadequate, and his warrantless arrest did not meet the statutory requirements of 8 U.S.C. § 1357(a)(2), Petitioner's liberty was already erroneously deprived.

---

[4]      The Court need not address Petitioner's other claims, given its conclusion that Petitioner's initial custody determination under 8 U.S.C. § 1226(a) and his warrantless arrest under 8 U.S.C. § 1357(a)(2) were procedurally deficient, in violation of the Due Process Clause of the Fifth Amendment.

## I.      ICE's Initial Custody Determination was Inadequate

The government asserts that Petitioner is "properly detained pursuant to [8 U.S.C.] § 1226(a)" and, although it sets forth the correct statutory requirements of such detention, *see* ECF No. 6 at 2–3, it fails to demonstrate that these requirements were met with respect Petitioner.

Section 1226(a) provides, in relevant part, that:

. . . an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

    (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

    (B) conditional parole

8 U.S.C. § 1226(a).  In practice, the statute affords Petitioner "an initial custody determination *before* exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk." *Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) (citing 8 C.F.R. §§ 1003.19(a), (f), 1236.1(d)(1)) (emphasis in original); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) ("[B]efore the Government may exercise such discretion to detain a person, § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination."); *Gopie v. Lyons*, No. 25-cv-05229, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) (collecting cases).

The government states, in conclusory fashion, that "ICE made an individualized custody determination that Petitioner poses a flight risk." ECF No. 6 at 3.  Instead of supporting that position, the government argues that the Court is "jurisdictionally bar[red] [] from reviewing that

6

determination." *Id.*  While the government is correct that "Section 1226(e) provides that '[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review,'" ECF No. 6 at 3, "that is not the Court's inquiry here," *Pastrana-Beltran*, 2026 WL 1398609, at *3.  "Rather than impermissibly pry behind the discretionary curtain, the Court assesses whether and how correct procedures were applied at all (they were either not applied or applied erroneously) and ultimately, whether [Petitioner]'s detention comports with due process (it does not)." *Pastrana-Beltran*, 2026 WL 1398609, at *3 (citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)).  In this case, the Court's assessment of "whether and how correct procedures were applied" leads it to the inescapable conclusion that, with respect to Petitioner's initial custody determination, the relevant procedures were, at the very least, "applied erroneously." *Id.*

As a preliminary matter, it is apparent that the initial custody determination did not happen before or contemporaneously with his arrest.  *Compare* ECF No. 6-2 at 3 (I-213 Form, Exhibit A to the government's Response) (indicating Petitioner was arrested at or around 6:12 a.m.) *with* ECF No. 6-4 at 3 (INA § 236(a) Initial Custody Determination Form, Exhibit C to the government's Response) (indicating the initial custody determination was completed at 9:50 a.m.).  That alone is a violation of Petitioner's due process rights.  *See Pastrana-Beltran*, 2026 WL 1398609, at *2 ("[Petitioner] was denied a custody determination before or contemporaneous with his . . . arrest.  That in itself was a violation of his due process rights."); *Lopez Benitez*, 795 F. Supp. 3d at 492–93.

But even if the Court were to set the chronology aside, the initial custody form demonstrates that the government's initial determination does not comport with the instructions of the form itself, nor the assessment Section 1226(a) requires.  Specifically, in the section of the custody form titled "Flight Risk," the officer marked "No," next to the question:  "Has the

individual established that he/she does not pose a flight risk?"  ECF No. 6-4 at 3.  The officer

provided three reasons:  (1) "Curimilma Quille has no pending applications with USCIS";

(2) "Curimilma Quille has been unlawfully employed while in the United States"; and

(3) "Curimilma Quille has no immediate family or ties to the community."  *Id.*  Each of these

purported "reasons" is flawed.

First, the statement that Petitioner had "no pending application with USCIS" is no

different than the determination that the court rejected in *Pastrana-Beltran*.  There, the court

found that:

> The problem is that a per se determination of this sort—on his status alone, rather
> than any assessment of the factors listed on the form—comports not with 1226(a),
> but with Respondents' desired policy of mandatory detention under 1225(b)(2)(A)
> for any noncitizens who entered the U.S. without inspection however long ago. . . .
> [This] threatens a ping pong approach to Petitioner's liberty that is constitutionally
> untenable.

*Pastrana-Beltran*, 2026 WL 1398609, at *2 (citing *Inestroza Carbajal v. Frazier*, No. 26-cv-

2778, 2026 WL 1309265 at *4 (E.D.N.Y. May 12, 2026)).  The result is the same here.  Whether

Petitioner had a pending application or not, using his status in this way is an improper

application of Section 1226(a)'s requirements.

Second, the officer's statement that Petitioner "has been unlawfully employed while in

the United States" shows that the initial custody determination is fundamentally flawed.  Here,

the only basis the government has to characterize Petitioner's employment as "unlawful" is the

fact that he entered the United States without inspection.  That definition is untenable for

purposes of Section 1226(a) because it would apply to any noncitizen who entered the United

States without inspection and later found stable employment.  This sort of generic finding is

incompatible with the *individualized* custody determination that Section 1226(a) requires.  *See*

*Lopez Benitez*, 795 F. Supp. 3d at 492–93; *Gopie*, 2025 WL 3167130, at *2.  If the Court were to

8

accept that generic finding as meeting the requirements of Section 1226(a), virtually any noncitizen's employment would be "unlawful," and the government would effectively transform a factor that typically counsels against a determination that someone is a risk of flight into one that justifies detention.  Not only does this sort of sweeping generalization contravene the procedural requirements of Section 1226(a), it forecloses any meaningful opportunity for Petitioner to demonstrate that he is neither a danger to the community nor a flight risk.  It is also fundamentally unfair.  This sort of reasoning creates a heads-I-win-tails-you-lose scenario that, if accepted, would effectively allow the same *per se* determination that this Court and others have already rejected as "constitutionally untenable."  *See Pastrana-Beltran*, 2026 WL 1398609, at *2 *see also Inestroza Carbajal*, 2026 WL 1309265 at *4 (granting habeas petition when the government could not explain why petitioner was a flight risk or a danger to the community, "[o]ther than in conclusory fashion," and noting that his years living in the U.S. "and lack of criminal history suggest neither is the case").  This sort of catch-22 violates due process.

The officer's third "reason"—that Petitioner "has no immediate family or ties to the community"—fares no better.  In fact, it undermines whatever confidence in the government's proper application of the Section 1226(a) procedures that remained.  Here, there is a blatant error.  Not only is the record clear that Petitioner does, in fact, have immediate family and ties to the community, the government's own forms—filled out on the same day he was arrested and within minutes of each other—make it abundantly clear that this reason is inaccurate.  *Contrast* ECF No. 6-2 at 4 (indicating on Petitioner's Form I-213 that he has "on[e] [U.S. Citizen] child" born in 2024 and that he "called his girlfriend" after his arrest) *with* ECF No. 6-4 at 3 (indicating on Petitioner's initial custody form that he "has no immediate family").  If that inconsistency itself were not enough, the procedural failure is compounded because the forms were reviewed,

9

if not completed, by the same officer. *Compare* ECF No. 6-2 at 2 (listing "Langlois, J" as the "Examining Officer" alongside the digital signature of "Jason V Langlois," timestamped at approximately 9:40 a.m. on April 30, 2026) *with* ECF No. 6-4 at 3 (listing "Langlois, Jason" as the "Supervisory Detention and Deportation Officer," and indicating the form was completed at 9:50 a.m. on April 30, 2026). ICE's inaccuracy is significant because it demonstrates not only a high risk of the erroneous deprivation of Petitioner's liberty interest, but also, the actual erroneous deprivation of that interest. The government's failure to include accurate information on the initial custody form demonstrates that Petitioner was effectively foreclosed from an opportunity to "demonstrate to the satisfaction of the officer" that he was neither dangerous nor a flight risk. *See Gopie*, 2025 WL 3167130, at *2. If the government did not accurately record the truth, Petitioner's detention was a foregone conclusion. If the government did not even consider the truth and instead recorded what it thought would justify detention, that is far worse. Under either scenario, Petitioner was not afforded due process.

Taken together, Petitioner was denied due process because ICE's initial custody determination was inadequate.[5] This alone is enough to render his detention invalid. *See Pastrana-Beltran*, 2026 WL 1398609, at *2–3 (granting habeas relief and ordering petitioner's release because the government "did not apply the test [Section] 1226(a) requires, and which the [initial custody determination] form itself instructs"); *Lopez Benitez*, 795 F. Supp. 3d at 497

---

[5] For the avoidance of doubt, the government's argument that Petitioner must exhaust his administrative remedies before seeking the Court's intervention," ECF No. 6 at 3–5, is unavailing. It is well-settled that Petitioner "is not required to exhaust a process that was deficient from the outset." *Gopie*, 2025 WL 3167130, at *3. Nevertheless, because courts may excuse exhaustion when a petitioner has raised a substantial constitutional question, the Court excuses exhaustion—if any were required—because Petitioner has raised such a constitutional question. *See Arango v. Genalo*, No. 25-cv-6720, 2025 WL 3637500, at *3 (E.D.N.Y. Dec. 16, 2025).

(granting habeas relief and ordering petitioner's release "given the nature of the constitutional violation [he] sustained" by the government's failure to properly conduct an "individualized assessment before detaining him").  However, as discussed below, Petitioner suffered further constitutional injury *vis-à-vis* his warrantless arrest because ICE did not follow the statutory requirements of 8 U.S.C. § 1357(a)(2).

> II.      ICE Failed to Satisfy the Requirements of Section 1357(a)(2)[6]

Section 1357(a)(2), provides ICE with limited authority to conduct warrantless arrests.  Specifically, ICE must obtain a warrant before arresting a noncitizen unless the officer "has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest."  8 U.S.C. § 1357(a)(2) (emphasis added); 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."); *see also Yeleshev v. Larocco*, No. 26-cv-2294, 2026 WL 1353806, at *3 (E.D.N.Y. May 14, 2026) (noting that "the limited circumstances permitting warrantless arrests . . . often all turn on the existence of exigent circumstances").  Here, the government fails to sufficiently demonstrate the exigency requirement.

Central to the government's exigency argument is its assertion that when officers arrested Petitioner, he "had just attempted to flee and . . . had access to a nearby vehicle from which he had recently emerged."  ECF No. 6 at 6.  In the government's view, this is enough to

---

[6]      Although this conclusion is not essential to the *Mathews* analysis, the Court nevertheless includes it in this Order because the defects identified in this section further support its conclusion that the government's application of Section 1226(a) does not comport with due process.

demonstrate that Petitioner was "likely to escape before a warrant [could] be obtained for his arrest." *Id.* (quoting 8 U.S.C. § 1357(a)(2)).  There are two problems with this argument.

First, the record is deficient.  The government includes Petitioner's Form I-213 in its Response, which describes:  (1) a vehicle surveillance operation targeting someone other than Petitioner; (2) a vehicle stop; and (3) two men exiting the vehicle.  *See* ECF No. 6-2 at 3.  But that report was prepared by an officer who "was not involved in the arrest and was assigned to process the arrest."  *Id.*  Accordingly, there is a dearth of personal knowledge as to Petitioner's specific actions, what Petitioner heard or understood, whether he knew the individuals who surrounded him were law enforcement officers, or any other specific details.  This dearth of personal knowledge suggests a significant risk of erroneous deprivation in its own right.  That risk is even more pronounced given that Petitioner states, unequivocally, that he did not attempt to flee, but that "he briefly stepped out of the vehicle because he did not feel safe remaining inside the car during a confusing and coercive enforcement encounter."  ECF No. 7 at 4.

Second, the government's evidence is, again, internally inconsistent.  In this instance, although the government's assertion that Petitioner attempted to flee the vehicle stop is central to its exigency argument, there is no mention of this alleged flight attempt on the initial custody form.  This omission is puzzling, especially given that the initial custody form indicates that attempts to flee are among the "factors to consider" for flight risk.  *See* ECF No. 6-4 at 3.  This particular evidentiary contradiction suggests, at the very least, that reasonable minds could differ about whether Petitioner actually attempted to flee.  If reasonable minds could differ in that respect, it is clear that the officers did not have sufficient reason to believe that Petitioner was "likely to escape before a warrant [could] be obtained for his arrest."  *See* 8 U.S.C. § 1357(a)(2).

Taken together, the government does not overcome the deficiencies in its exigency argument. Consequently, the government fails to demonstrate that it satisfied the requirements of Section 1357(a)(2). Because Section 1357(a)(2) requires a warrant for arrest unless both requirements are satisfied, the government's warrantless arrest of Petitioner violated due process.

Turning to the third and final *Mathews* factor, "the Attorney General's discretion to detain individuals under 8 § U.S.C. 1226(a) [*sic*] is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025). Here, however, the government's own evidence fails to support its argument that Petitioner was a flight risk. And, the government concedes that Petitioner does not pose a danger to the community. *See* ECF No. 6-4 at 2 (showing the officer marked "Yes" in response to the question: "Has the individual established that he/she does not pose a danger to persons or property?"); *see also* Declaration of Deportation Officer Efren Olivencia, ECF No. 6-1 ¶ 9 (acknowledging that "Petitioner had established that he did not pose a danger to persons or property"). Because the government has not demonstrated that Petitioner is, in fact, either a flight risk or a danger to the community, it has failed to show a significant interest in his continued detention.

On balance then, Petitioner's continued detention violates his due process rights. The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973) ("The traditional function of the writ [of habeas corpus] is to secure release from illegal custody"; it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it."). And, because "any post-deprivation review by an immigration judge would be

13

inadequate," *Lopez Benitez*, 795 F. Supp. 3d at 497, the government's ongoing detention entitles him to immediate release.

## **CONCLUSION**

For these reasons, Petitioner's arrest and detention violate the Due Process Clause of the Fifth Amendment, and his Petition for a writ of habeas corpus, ECF No. 1, is GRANTED.

The government is directed to immediately release Petitioner from custody and is further directed to certify compliance with the Court's Order by filing a letter on the docket no later than 5:00 p.m. on May 23, 2026.  The Court further orders that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing by clear and convincing evidence that his detention is authorized under 8 U.S.C. § 1226(a).  This Order includes "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections."  *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements" and return petitioner to "the status quo ante").

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

/s/Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated:  Brooklyn, New York
May 22, 2026

14